# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

DONNA MCCANN,

          Plaintiff,

v.                                                  Case No:  2:14-cv-265-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

## ORDER

Donna Marie McCann seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    Issues on Appeal

Plaintiff raised three issues:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge Larry J. Butler (the "ALJ") that Plaintiff does not have a severe mental impairment; (2) whether the ALJ erred by failing to consider Plaintiff's obesity in the assessment of Plaintiff's residual functional capacity ("RFC")

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

and by failing to define Plaintiff's "limited" ability to reach; and (3) whether the ALJ improperly compelled Plaintiff to waive attorney-client privilege and failed to conduct a fair and impartial hearing.

## II.   Procedural History and Summary of the ALJ Decision

In June 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning May 21, 2010.   Tr. 113, 120.   The claims initially were denied on August 24, 2011 and upon reconsideration on October 4, 2011.   Tr. 39-40, 59-73, 75-86. Plaintiff requested and received a hearing before the ALJ on May 31, 2013, during which she was represented by an attorney.   Tr. 318-52.   Plaintiff testified at the hearing.   *Id.*   The ALJ issued an unfavorable decision on August 8, 2013.   Tr. 18.

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.   Tr. 14.   At step one, the ALJ concluded that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date, May 21, 2010.   *Id.*   At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, ulcerative colitis (UC), irritable bowel syndrome (IBS), acid reflux and instracystal cystitis."   Tr. 15.   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 . . ."   Tr. 16.   The ALJ determined that Plaintiff has the RFC to

> frequently lift 10 pounds, occasionally lift 20 pounds, stand, walk and
> sit for six hours in an eight hour workday with unlimited pushing and
> pulling. She can perform left overhead lifting on a limited basis and
> should avoid concentrated exposure to fumes, odors, dusts, gases and

poor ventilation.

Tr. 16.   The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and the limiting effects of the symptoms are not fully credible.   Tr. 17.   Next, the ALJ found that Plaintiff is capable of performing her past relevant work as an office assistant.   Tr. 18.   In comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ found that Plaintiff is able to perform it as actually performed.   *Id.*   Thus, the ALJ concluded that Plaintiff has not been disabled through the date of the decision.   *Id.*   On April 18, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.   Tr. 8-12. On May 15, 2014, Plaintiff appealed to this Court.   Doc. 1.   This matter was voluntarily remanded by the Commissioner for further administrative action.   Docs. 22, 24.   The Appeals Council set aside its April 2014 decision to consider Plaintiff's allegations of ALJ bias against Plaintiff's attorneys, but again denied request for review.   Supp. Tr. 353-57, 364-65.   Accordingly, the ALJ's August 8, 2013 decision is the final decision of the Commissioner.   On February 7, 2015, the matter was reopened in this Court and is now ripe for judicial review.   Doc. 28.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1),

423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step

sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520;

416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20

C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631

F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion

through step four; and, at step five, the burden shifts to the Commissioner.   *Id.*;

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The Eleventh Circuit has noted that

the Commissioner's burden at step five is temporary, because "[i]f the Commissioner

presents evidence that other work exists in significant numbers in the national

economy, 'to be considered disabled, the claimant must then prove that he is unable

to perform the jobs that the Commissioner lists.'"   *Atha*, 616 F. App'x at 933 (citing

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir.2001)).   The scope of this Court's

review is limited to determining whether the ALJ applied the correct legal standards

and whether the findings are supported by substantial evidence.   *McRoberts v.*

*Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S.

389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by

substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a

scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v.*

*Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)).

      a.    *Whether substantial evidence supports the ALJ's finding that Plaintiff does not have a severe mental impairment*

Plaintiff first asserts the ALJ erred in finding that Plaintiff's medically determinable impairments of anxiety and depression were not severe mental impairments. Doc. 30 at 4. Consequently, Plaintiff argues, the ALJ did not incorporate any mental limitations in the RFC assessment. *Id.* The Commissioner responds that substantial evidence supports the ALJ's conclusion that Plaintiff does not have a severe mental impairment. Doc. 31 at 4-9. Further, the Commissioner argues that Plaintiff does not explain how any diagnosed mental impairment significantly limits her ability to work. *Id.* at 4. In any event, the Commissioner argues that because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential evaluation process, any alleged error is harmless. *Id.* at 9.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work. *Bowen*, 482 U.S. at 146 n.5. "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Social Security Regulations provide that an "impairment or combination

of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a), 416.921(a).   Basic work activities mean "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1521(b), 416.921(b).   Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting. *Id.* § 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique." 20 C.F.R. §§ 404.1520a, 416.920a.   Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a.   The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more. 20 C.F.R §§ 404.1520a(c)(4), 416.920a(c)(4).   Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).   The ALJ's decision must incorporate findings and conclusions based on the special technique. 20 C.F.R. §§

404.1520a(e)(4), 416.920a(e)(4).   Moreover, "the [ALJ's] decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."   *Id.*

Here, because the ALJ failed to apply the proper legal standards, the Court is unable to do a meaningful review to determine whether the ALJ's decision at step two, or at subsequent steps in the sequential evaluation process, is supported by substantial evidence.   Specifically, the ALJ failed to address the opinion of Plaintiff's primary care physician, Dr. Christopher Yuvienco, and the records from Lee Mental Health Center ("LMHC") regarding Plaintiff's mental limitations.   Accordingly, the decision must be reversed and remanded to the Commissioner for consideration of this medical opinion and the remaining record evidence relating to Plaintiff's depression and anxiety.

The ALJ determined at step two that Plaintiff suffered from severe physical impairments, but not mental impairments.   Tr. 15.   In reaching this conclusion, it appears the ALJ relied solely on the findings of nonexamining state agency medical consultants, Jessica Anderton, Psy.D. and Gloria Hankins, M.D.   *Id.*   The ALJ discussed that both medical consultants opined Plaintiff had only mild limitations as to activities of daily living, social functioning, and in maintaining concentration, persistence, or pace.   *Id.*   Neither doctor found Plaintiff to have experienced any episodes of decompensation.   *Id.*   Both medical consultants, therefore, determined Plaintiff's mental impairments to be nonsevere.   *Id.*   The ALJ accorded these

opinions great weight, as he determined them to be supported by the totality of the medical evidence.   *Id.*

The ALJ, however, failed to take into account any of her mental health records, specifically the opinion of Dr. Yuvienco, who opined that Plaintiff's mental impairments resulted in functional limitations.   Tr. 233.   Dr. Yuvienco, who treated Plaintiff from January 2009 through January 2013, diagnosed Plaintiff with generalized anxiety disorder and depression.   Tr. 218-19, 288, 291, 328.   On October 9, 2011, Dr. Yuvienco completed a Supplemental Mental Impairment Questionnaire, opining that Plaintiff "suffers from a mental impairment that significantly interferes with daily functioning."   Tr. 233.   Plaintiff argues that the ALJ erred in exclusively relying on the state agency medical consultants and in failing to explain the weight given to every medical opinion.   Docs. 30 at 5-7, 34 at 3.   The Commissioner acknowledges that the ALJ did not specifically address Dr. Yuvienco's opinion, "except to note that no treating or examining physician had documented any medically acceptable clinical or laboratory diagnostic techniques to support a finding of disability at step [three]."   Doc. 31 at 6.

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ; but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating

source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).   With respect to the opinions of the state agency medical consultants, the ALJ did so here.

In the Eleventh Circuit, however, the law is clear that "the [ALJ] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."   *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   Moreover, "the ALJ must state with particularity the weight given to *different* medical opinions and the reasons therefor."   *Winschel,* 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)) (emphasis added).   The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."   631 F.3d at 1179 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed, because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational."   631 F.3d at 1179 (citations omitted).

Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."  20 C.F.R. § 404.1527(c)(2).   If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight.   *Id.*   By contrast, if the ALJ does not accord controlling weight to a treating physician's opinion, he must clearly articulate the reasons for doing so.   *Winschel*, 631 F.3d at 1179.

Upon a review of the decision, the Court concludes that the ALJ erred in failing to weigh, or even discuss Dr. Yuvienco's opinion in step two of his findings.   Upon applying the special technique and considering the four broad functional areas for evaluating mental disorders, the ALJ found only mild limitations in Plaintiff's activities of daily living; social functioning; and concentration, persistence or pace. Tr. 15.   He found no episodes of decompensation of extended duration.   *Id.*   Dr. Yuvienco's opinion that Plaintiff's impairment significantly limits her daily functioning, if given any weight, might affect the degree of limitation in either of the first three functional areas, or it might otherwise be evidence indicating more than a minimal limitation in ability to do basic work activities.   *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).   The potential impact of Dr. Yuvienco's opinion, however, is disputed by the parties.   The Commissioner asserts that Plaintiff failed to show any functional limitations due to her diagnosed mental impairments (Doc. 31 at 4), and Plaintiff contends that Dr. Yuvienco's opinion proves functional limitations

(Docs. 30 at 6-7, 34 at 3-4).   The Court cannot determine whether the ALJ's failure to address Dr. Yuvienco's opinion was harmless "without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982) (remanding where the court was unable to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so).

Moreover, the Commissioner's assertion that the ALJ was not required to consider Plaintiff's mental impairments because at the hearing she disclaimed that any mental impairments precluded her to return to her past relevant work (Doc. 31 at 8) is unpersuasive in light of the fact that a considerable portion of Plaintiff's testimony was related to her mental health treatment.   Tr. 320-51.

Additionally, while the ALJ cursorily considered some evidence relating to Plaintiff's mental impairments in the RFC analysis, he again failed to discuss or even address Dr. Yuvienco's opinion or provide any meaningful review of Plaintiff's mental health records.   When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   20 C.F.R. § 404.1520(e).   The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d at 1232, 1238 (11th Cir. 2004).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The

ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).

Here, in his RFC analysis, the ALJ summarized his analysis of Plaintiff's mental health treatment as follows:

> Claimant was receiving medication management from Lee Memorial Health System. On April 17, she reported that she smoked marijuana every night.  The attending physician decreased medication and told her to find a new provider if that was not helpful.   There is no additional medical evidence in the record.

Tr. 17.   This discussion is insufficient to account for the totality of the evidence.   For example, from August to November, 2012, Plaintiff received treatment from Lee Physician Group for other reasons and at that time also reported symptoms of depression.   She appeared nervous and anxious, and was recommended to seek treatment at LMHC.   Tr. 241-44, 248.

Plaintiff's records from LMHC show that she consistently sought treatment and medication adjustment due to her anxiety and depression.   Tr. 281, 252. Plaintiff was treated at LMHC from May 21, 2012 through January 18, 2013.   *Id.* On May 21, 2012, she stated that she had many depressive disorders throughout her life and was seeking treatment with antidepressants.   Tr. 276.   She reported that twenty years prior she attempted suicide by overdose and by cutting her wrists.   *Id.* Plaintiff's mood appeared euthymic, although the treating psychiatrist, Dr. Ernesto Matos-Gonzales. M.D., contemplated this was likely due to Plaintiff already being on an antidepressant medication.   *Id.*   Dr. Matos-Gonzales opined that it was best to

keep Plaintiff on the same medication since it appeared to be working.   Tr.   278.
Plaintiff was diagnosed with depression, not otherwise specified, and she also was
assessed a global assessment functioning ("GAF") score of 60.   Tr. 279-80.   On July
9, 2012, Plaintiff returned to LMHC, reporting that her anxiety had decreased
somewhat with medication, but she still felt anxious and uptight.   Tr. 272-73.   A
record of her September 26, 2012 visit showed Plaintiff was taking Klonopin for her
panic attacks.   Tr. 270.   During this visit, Dr. Dale O'Bryan, another treating
psychiatrist at LMHC, referred her to group therapy.   *Id.*   On October 24, 2012,
Plaintiff reported that she was benefitting from group therapy, but she also described
panic attacks and social anxiety when she was going out.   Tr. 266.   Because of the
ALJ's minimal discussion of these records (Tr. 17), the Court is unable to determine
if he meaningfully considered this evidence, or, as discussed, Dr. Yuvienco's opinion.

   The ALJ may choose to give little or no weight to treating physician evidence,
and is allowed to do so pursuant to the standards set forth above, but he cannot
simply ignore such evidence.   *See Nyberg*, 179 F. App'x at 592.   Without specifying
the weight, if any, that was given to the treating physicians' records and the reasons
for doing so, the Court's review is frustrated.   For the same reasons, the sole fact
that the ALJ found some severe impairments and proceeded to step three of the
sequential evaluation process, does not render this a harmless error considering the
circumstances of this case.   Accordingly, the Court will remand this case to the
Commissioner to specifically address the objective evidence relating to Plaintiff's
anxiety and depression, state the weight given to this evidence, and re-evaluate

whether Plaintiff has any severe mental impairments.   The ALJ's decision must incorporate findings and conclusions based on the special technique.   *See* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).   Furthermore, the ALJ must also consider all of the relevant evidence in the RFC analysis.

> b.   *Whether the ALJ erred by failing to consider Plaintiff's obesity in the assessment of Plaintiff's "RFC" and by failing to define Plaintiff's "limited" ability to reach*

Next, Plaintiff contends that the ALJ erred by failing to adequately consider the effects of obesity on her RFC.   Doc. 30 at 8-9.   Specifically, Plaintiff asserts "the ALJ did not consider any functional limitations that result from [Plaintiff's] obesity either independently, or in combination with her mental impairments, as he was required to do under SSR 02-1p."   *Id.*   The Commissioner argues that the ALJ complied with his responsibility to consider the effects of obesity in assessing Plaintiff's RFC and her disability claim.   Doc. 31 at 9.   The Commissioner also argues that while Plaintiff provided reports and medical notes indicating that she was obese, she has not established that she has any limitations beyond her RFC due to her obesity.   The Court agrees.

As noted, when an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   20 C.F.R. § 404.1520(e).   Also as previously discussed, the RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a); *Phillips*, 357 F.3d at 1238.   Social Security Ruling ("SSR") 02-1p

describes how obesity is considered during the evaluation process.   Adjudicators are reminded that the combined effects of obesity with other impairments can be greater than the effects of each medical impairment considered separately.   SSR 02-1p, 2002 WL 34686281, at *1.   Specifically, the SSR notes that obesity can cause functional limitations.   *Id.* at *3.

> The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
> . . . .
> RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Id.* at 6.   The ruling provides that each case will be evaluated "based on the information in the case record."   *Id.*

At the hearing, Plaintiff testified that she is approximately five feet four inches tall and weighs 200 pounds.   Tr. 324.   She stated that she usually weighed 165 to 170 pounds.   *Id.*   She testified that her doctor asked her to lose some weight.   *Id.* While she lost fifteen pounds, she stated that due to the side effects of her medication and difficulty exercising, she has not lost more weight.   *Id.*   For instance, she stated "some of the medications I'm on, I get nauseous, so I eat a lot to get rid of the nausea, and the other being that I can't exactly get up and jog anymore."   *Id.*   Plaintiff's attorney inquired whether Plaintiff felt she was able to work eight hours per day in

a forty-hour workweek, to which she responded she believed she could.   Tr. 347-48. She then clarified, "[m]y brain's telling me yeah; my body, maybe not so much."   Tr. 348.   The ALJ also asked Plaintiff: "doing a job like you did before, could you do it now?"   Tr. 350.   Plaintiff responded, "[m]entally, yes, I believe I could," but physically, "I can't say my body would stand up to be able to . . ." Tr. 350.

Plaintiff did not testify, however, that she cannot work due to her obesity. Neither does she demonstrate how her obesity causes any functional limitations that prevent her from performing work related activities.   Plaintiff's conclusory assertion that "[i]t is apparent that her obesity would act in concert with her other physical problems to further limit her work capacity, as well as independently causing functional limitations" is not a sufficient explanation.   Doc. 30 at 8.   Moreover, in her reply brief, Plaintiff asserts that "[t]here is no question that the ALJ did not explicitly discuss [Plaintiff's] obesity, or corresponding limitations stemming from her obesity in combination with her musculosceletal impairments," but she provides no evidence or discussion as to what her obesity related limitations are.   Doc. 34 at 8. Plaintiff bears the ultimate burden of proving that she is disabled and must furnish medical and other evidence to support such a finding.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   Even though the ALJ was required to consider Plaintiff's obesity, Plaintiff failed to meet her burden of establishing that her obesity affected her ability to perform work related activities. *See Wind v. Barnhart*, 133 F. App'x 684, 690-91 (11th Cir. 2005) (finding the ALJ did not err in determining that plaintiff's obesity was not a severe impairment where there was no evidence it

affected the plaintiff's ability to perform work activities).   Because the Court finds, however, that remand is appropriate for the ALJ to consider evidence relating to Plaintiff's mental impairments, the Court will direct the Commissioner to address Plaintiff's obesity in accordance with SSR 02-1p.

Plaintiff also asserts the ALJ erred in the RFC analysis because the ALJ did not define how "limited" Plaintiff was in her ability to reach.   Doc. 34 at 7.   As previously stated, the ALJ found that Plaintiff "can perform left overhead lifting on a *limited* basis."   Tr. 16.   Plaintiff asserts that "limited" is a vague term and "does not describe a specific functional limitation, as required by the regulations at 20 C.F.R. §§ 404.1545(b)(d), 416.945(b)-(d) and SSR 96-8p."   Doc. 30 at 9.   The Commissioner responds that the ALJ is not required to use particular phrases or formulations so long as the court can determine what statutory and regulatory requirements the ALJ applied.   Tr. 31 at 11.   The Commissioner asserts that "Plaintiff has not alleged, must less established, that the limitations the ALJ assessed prevented her to return to her past relevant work."   *Id.* at 12.   In her reply brief, Plaintiff reiterates that the RFC is invalid because the ALJ failed to conduct a sufficiently specific RFC assessment.   Doc. 34 at 7-8.   Plaintiff again fails to discuss or offer any explanation as to how the the limitations the ALJ assessed prevent her to return to her past relevant work.

During her hearing, Plaintiff testified that she stopped working due to her disability and because she was laid off.   *See* Tr. 335.   In formulating the RFC, the ALJ discussed that

the record reflects work activity after the alleged onset date as well as the claimant admitting that she believed she was able to work. While that word activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have been somewhat greater than the claimant has generally reported. There is nothing in the record, which indicates the claimant's conditions have progressively worsened. It would be reasonable to infer that the claimant's conditions would not currently prevent the performance of substantial gainful activity. In addition, the claimant stopped working for reasons not related to the allegedly disabling impairment. Considering the claimant's allegedly disabling impairments were present at approximately the same level of severity, the fact that the impairments did not prevent the claimant from working at that time suggest that they would not currently prevent work.[2]

Tr. 17. Plaintiff relies on an Appeals Council Remand Order in which the Appeals Council remanded a case to the Administrative Law Judge because while the RFC stated that "the claimant is limited in his ability to reach in all directions," it did not define the reaching limitation. Doc. 34-1 at 2. The remand order further explained, however, "[t]his is material because the claimant is returned to his past relevant [work] at step four . . . , which requires 'frequent' reaching." *Id.* In the case at hand, Plaintiff has offered no evidence as to the reaching requirements of her past relevant work as an office assistant. Nevertheless, because the Court finds that remand is appropriate for the ALJ to consider the opinion of Plaintiff's treating physician, the Court will direct the Commissioner to define Plaintiff's reaching limitation.

---

[2] Plaintiff did not challenge the ALJ's credibility determination concerning Plaintiff's testimony. Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc.*, 385 F.3d at 1330.

c.   *Whether the ALJ improperly compelled Plaintiff to waive attorney-client privilege and failed to conduct a fair and impartial hearing*

Plaintiff asserts that the ALJ improperly compelled her to waive the attorney-client privilege and reveal confidential communications with her attorney and her attorney's staff.   Docs. 30 at 10-13, 34 at 9-10.   Specifically, Plaintiff argues that the ALJ refused to fully credit Plaintiff's mental health treatment and penalized Plaintiff because "she obtained mental health treatment on the confidential advice of counsel, rather than through referral from another source."   Doc. 30 at 12-13.   Plaintiff contends that the ALJ did not provide her with a full and fair hearing, and that the ALJ's decision was not supported by substantial evidence because of the compelled waiver.   *Id.*   In response, the Commissioner asserts that the ALJ's line of questioning was not improper.   Doc. 31 at 13.   The Commissioner argues that the record does not establish the existence of an attorney-client relationship between Plaintiff and the referral source, nor does it establish that Plaintiff understood that her communications would be confidential. Doc. 31 at 12.   Moreover, the Commissioner asserts that "there is no indication the ALJ used information about the referral against Plaintiff or that the result of the proceedings would have been different absent the information."   Doc. 31 at 13.

In the circumstances of this case, the Court does not find that the ALJ improperly questioned Plaintiff or failed to conduct a fair and improper hearing.   In a social security disability determination, any party has a right to appear before an ALJ.   *See* 20 C.F.R. § 416.1450(a).   A party may also make her appearance by means

of a designated representative.   *Id.* "The Hearings, Appeals and Litigation Manual ("HALLEX") is a policy manual written by the Social Security Administration to provide guidance on procedural matters."   *Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011).   Although "the Eleventh Circuit has not specifically addressed whether the HALLEX creates judicially-enforceable rights, what is certain, however, is that[] if it does[, ] remand is mandated only when the ALJ violates procedures in the HALLEX."   *Id.*   The HALLEX provides that an "ALJ will conduct administrative hearings in a fair and impartial manner."   HALLEX 1-2-6-1.   It also provides that an ALJ may not solicit evidence subject to the attorney-client privilege.   HALLEX 1-2-6-78.   Moreover, the regulations provide that although a claimant is responsible for producing evidence that is material to a determination of disability, "[o]ral or written communications between [a claimant] and [her] representative that are subject to the attorney-client privilege," are excepted "unless [the claimant] voluntarily disclose[s] the communication."   20 C.F.R. 404.1512(a),(b)(2).

The attorney-client privilege applies to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."   *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1262 (11th Cir. 2008).   The party invoking the privilege must establish the following:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either ([i]) an opinion on law of (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort;

and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 687 (S.D. Fla. 2010) (citing *United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir.1990)). Moreover, "the attorney-client privilege attaches only to the content of communications, not to matters concerning identity or procedure." *Id.* (citing *In re Grand Jury Proceedings*, 689 F.2d 1351, 1352 (11th Cir. 1982)). Additionally, the party invoking the privilege has the burden to establish the existence of an attorney-client relationship and the confidential nature of the information sought. *Id.*

The Court does not find that the ALJ violated any procedures in the HALLEX mandating a remand on this issue. Plaintiff testified that she began seeking treatment for her depression and other mental impairments at Ruth Cooper Center. Tr. 340-41. Plaintiff further provided that she attended group therapy at the Ruth Cooper Center about once per week, and lasted for a total of ten visits overall. Tr. 341. The ALJ inquired as to how Plaintiff decided to go to Ruth Cooper, and whether someone referred her to the treatment center. *Id.* In response, Plaintiff stated, "I actually got a list, I want to say that it was from one of the interns or something from Kushner & Kushner." *Id.* The ALJ then asked "why did you ask for the list?" (Tr. 341), and "[w]hose idea was it to go over there? It sounds like the attorney's idea to tell you the truth." Tr. 342. In response, Plaintiff further provided that she had informed the "young girl" at the receptionist desk of her attorney's office that she was suffering from mental depression, but she had no health insurance and could not afford treatment. *Id.* This prompted the "young girl" to hand Plaintiff a list of care

providers that would cost her little or no money.   Tr. 341-42.   Plaintiff's attorney objected to this line of questioning when the ALJ asked why the list was provided at the reception desk.   Tr. 343.   Plaintiff's attorney argued that the firm has "a resource list we provide our clients with," and that the matter is privileged, however the ALJ overruled this objection and continued to ask Plaintiff to explain exactly what she said to the receptionist and how the receptionist responded.   Tr. 344.

During the hearing, Plaintiff inconsistently refers to the person who physically provided her the list of medical care providers, at some points referring to her as "a young girl" or saying that the information was given to her by "one of the interns or something "and "the office receptionist."   Tr. 341-43.   At another point in her testimony, Plaintiff revealed that she believed that this same list was provided by a former client and said that "one of the other ladies had come in…and said that it helped her."   Tr. 342-43.   Plaintiff's medical records, however, document that "a friend" (non-professional) referred Plaintiff to the mental health center.   Tr. 276.

Additionally, it is unclear from the record whether there was any "confidential information" transmitted in the first place.   Plaintiff testified that she was given a list of low-cost care providers while she was at her attorney's office, and that the exchange occurred around the time she retained her attorney.   *Id.*   As previously noted, matters concerning identity or procedure are not privileged communication. *Henderson*, 269 F.R.D. at 687.   Further, Plaintiff's willingness to volunteer such information to the ALJ indicates that there was no intent on her part that such information should be kept confidential.   *Id.*

Finally, regardless of whether any privilege existed, Plaintiff has failed to establish that the information provided to the ALJ during her testimony deprived Plaintiff of a full and fair hearing, or otherwise negatively impacted the ALJ's decision.   Although Plaintiff makes the bare assertion that once the ALJ heard about the list given to Plaintiff, he refused to consider the medical evidence provided, there is no further support for that statement.   As the Commissioner correctly points out, "there is no indication the ALJ used information about the referral against Plaintiff or that the result of the proceedings would have been different absent the information."   Doc. 31 at 13.   While remand is warranted for other reasons discussed in this opinion, Plaintiff's third enumerated argument is without merit.

## V.   CONCLUSION

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards as discussed herein, and thus his determination that the Plaintiff is not disabled is not supported by substantial evidence.

Plaintiff requests that the Court remand the case to an administrative law judge ("ALJ") other than ALJ Larry Butler, as ALJ Butler is subject to ongoing disciplinary proceedings by the Commissioner, some of which allegations concern cases in which Plaintiff's counsel was involved.   Doc. 30 at 14.   In order to avoid any appearance or risk of actual bias or prejudgment, the case should be reheard by a different ALJ.   *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **REVERSED** and this matter be

**REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),

for the Commissioner to:

      A.    review and consider all of Plaintiff's medical records concerning her alleged impairments of anxiety and depression and determine the weight to be given to such evidence and the reasons therefor, and, further to:

            i.    determine whether they constitute a severe impairment at step two;

            ii.    determine the effect, if any, they have on the assessment of Plaintiff's RFC in combination with her other impairments; and

            iii.    incorporate findings and conclusions in the decision, pursuant to 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

      B.    address the effects of Plaintiff's obesity on her RFC in accordance with SSR 02-1p;

      C.    define Plaintiff's reaching limitations in her RFC; and

      D.    make any further determinations consistent with this Opinion and Order, or in the interests of justice.

2.     The Commissioner shall reassign the case for rehearing to an

Administrative Law Judge other than Administrative Law Judge Larry Butler.

3.     The Clerk of Court is directed to enter judgment accordingly, and close

the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 31st day of March, 2016.


CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record